## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JULIE DERMANSKY,

               Plaintiff,

      v.

THE YOUNG TURKS, INC.,

               Defendant.

C.A. No. 22-345-GBW

---

### MEMORANDUM ORDER

Before the Court is Defendant The Young Turks, Inc.'s ("Young Turks" or "Defendant") Motion to Partially Dismiss Plaintiff's Complaint and to Transfer Venue to the Central District of California (the "Motion," *see* D.I. 10), which is opposed by Plaintiff Julie Dermansky ("Dermansky" or "Plaintiff"). *See* D.I. 19. For the reasons set out below, Defendant's Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

### I.    LEGAL STANDARD

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The Federal Circuit applies the law of the regional circuit on a motion to transfer pursuant to 28 U.S.C. § 1404(a). *See In re Apple Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020) (on mandamus review). Courts in the Third Circuit evaluate a motion to transfer under the factors outlined in *Jumara v. State Farm Insurance*, 55 F.3d 873, 879-80 (3d Cir. 1995). *See In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017) (citing *Jumara*, 55 F.3d at 879-80). The movant has the burden to establish that the interests favor transfer. *See Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*,

126 F. Supp. 3d 430, 436 (D. Del. 2015) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970)) (citing *Jumara*, 55 F.3d at 879).

The District Court must first decide whether the case could have been brought in the district to which the movant wishes to transfer. *Jumara*, 55 F.3d at 878. If venue would have been proper in that district, the court then weighs whether the public and private interest factors favor transfer, keeping in mind that "'plaintiff's choice of venue should not be lightly disturbed.'" *Id.* at 879 (citations omitted). The private interest factors to consider include:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

> The public interests [] include[]: [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879–80 (citations omitted). "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (cleaned up); *see Ceradyne, Inc. v. RLI Ins. Co.*, 2021 WL 3145171, at *4 (D. Del. July 26, 2021). While the plaintiff's forum choice remains "the most important factor[,]" other factors will influence the transfer decision. *Express Mobile, Inc. v. Web.com Grp., Inc.*, 2020 WL 3971776, at *2 (D. Del. July 14, 2020). "Thus, . . . when a plaintiff . . . has no connection to Delaware . . . other than its choice to sue here and its Delaware incorporation[,] . . . such a plaintiff's choice . . . will not dominate the balancing to the same extent as it otherwise might." *Id.*

## II.    DISCUSSION

Defendant moves to partially dismiss Plaintiff's Complaint based on her failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to transfer this mater to the United States District Court for the Central District of California. *See* D.I. 10; D.I. 11. Because the Court finds that, on balance, the *Jumara* factors weigh in favor of transferring this case, the Court will grant Defendant's Motion to Transfer.[1]

The Court must first decide whether the case could have been brought in the Central District of California. *Jumara*, 55 F.3d at 878. Section 1404(a) provides that "a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Venue in a copyright action is governed by 28 U.S.C. § 1400(a), which provides that an action under the federal copyright laws "may be instituted in the district in which the defendant or his agent resides or may be found." Because "[a] defendant in a copyright action 'may be found' wherever the defendant is subject to personal jurisdiction . . . venue in a copyright action is proper in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state." *Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 584 (E.D. Pa. 2015). Applying these principles, there is no doubt that Defendant, who maintains a principal place of business in Culver City, California, is subject to personal jurisdiction in the Central District of California. D.I. 13 ¶ 3; *see also* D.I. 1 ¶ 3. Thus, jurisdiction in in the Central District of California would be proper.

The Court next turns to the private and public interest factors outlined in *Jumara*.

---

[1] The Court does not reach the substantive merits of Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Accordingly, because the Court will grant Defendant's Motion to Transfer, the Court will deny Defendant's Motion to Dismiss as moot with leave to refile once this matter is transferred to the Central District of California.

### A.   Plaintiff's Forum Preference

Plaintiff is a resident of Louisiana and, based on the present record, has no apparent connection to Delaware besides the filing of this action.   Defendant is incorporated in Delaware but maintains and performs a substantial amount of its business in Culver City, California.   D.I. 13 ¶¶ 1, 4.   Accordingly, while a plaintiff's choice of forum is generally accorded significant weight, *see VLSI Tech. LLC v. Intel Corp.*, C.A. No. 18-966-CFC, 2018 WL 5342650, at *4 (D. Del. Oct. 29, 2018), "the weight to be accorded to [Plaintiff's] forum preference is somewhat lessened," where, as here, Plaintiff is an out-of-state resident "without any apparent connection to Delaware."   *Werner v. Hive Media Group, LLC*, C.A. No. 20-1176-LPS, 2021 WL 3662902, at *2 (D. Del. Aug. 18, 2021); *see also Joseph v. Buffalo News, Inc.*, C.A. No. 16-1325-RGA, 2017 WL 3314006, at *1 (D. Del. Aug. 3, 2017) (granting transfer where the "only connection to Delaware is the fact that Defendant is incorporated in the State of Delaware").   Thus, this factor only slightly weighs against transfer.

### B.   Defendant's Forum Preference

Defendant prefers to litigate in the Central District of California because it maintains its principal place of business in Culver City, California.   D.I. 11 at 14; *see also* D.I. 13 ¶¶ 1, 4. Accordingly, this factor favors transfer.

### C.   Whether the Claims Arose Elsewhere

Plaintiff's claims are based on Defendant purportedly infringing a number of Plaintiff's photographs embedded in Defendant's videos, which were posted to Defendant's YouTube channel. *See generally* D.I. 1.   There is no dispute that Defendant operates a nationally available website. D.I. 13 ¶ 11.   However, the record shows that Defendant created the allegedly infringing videos in California, and that Defendant operates and maintains its servers out of central

California. *Id.* ¶¶ 7-10. Moreover, the allegedly infringing videos are hosted on YouTube, which is based out of San Bruno, California. D.I. 12 ¶ 11. Thus, based on the present record, there is no evidence that any of the underlying events supporting Plaintiff's claims occurred in Delaware. Rather, the publications at issue giving rise to Plaintiff's copyright claims took place in California. Accordingly, this factor slightly favors transfer. *See Joseph*, 2017 WL 3314006, at *1.

**D.    The Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition**

This factor is neutral. Although Defendant is incorporated in Delaware, it claims that litigating in "[t]he Central District of California is far more convenient for the parties and the parties' employees" because "Defendant's principal offices, and all witnesses with knowledge potentially relevant to this lawsuit, are located in the Central District of California." D.I. 11 at 15. However, Defendant is a national corporation generating millions of dollars from millions of viewers and subscribers, *see* D.I. 21 ¶ 11; *id.*, Ex. 5, such that it could "shoulder the burden of litigating in Delaware." *Motorola, Inc. v. PC-Tel, Inc.*, 587 F. Supp. 2d 349, 358 (D. Del. 1999). Plaintiff is a professional commercial photographer who alleges "would be burdened significantly if forced to litigate this case in California" because she "chose[s] not [to] fly on airplanes or other public transportation because [she] do not want to expose those vulnerable communities to Covid-19." D.I. 20 ¶¶ 2, 16-17. Specifically, because Plaintiff states that she will only travel by car, she claims that "[i]t would be financially and physically difficult for [her] to travel to California, which is over 700 miles longer than driving to Delaware." *Id.* ¶ 17. However, the present record reveals that Plaintiff initiated at least twelve copyright lawsuits across the country, including three in California, since the Covid-19 pandemic began. *See* D.I. 12, Ex. 1; *id.* ¶ 5; *see also Genetic Techs. Ltd. v. Natera, Inc.*, C.A. No. 12-1737-LPS, 2014 WL 1466471, at *1 (D. Del. Apr. 15, 2014) (that plaintiff chose to previously litigate similar matters in the Northern District of California

"effectively conced[es] the convenience of the Northern District"). That Plaintiff chose to litigate across multiple forums, including in California as recently as April 2021, therefore belies Plaintiff's purported travel hardships. *Fortinet, Inc. v. FireEye, Inc.*, 944 F. Supp. 2d 352, 355 (D. Del. 2013) (transferring patent action because, among other things, plaintiff had previously "availed itself of the jurisdiction of Northern California on at least five occasions"); *see also Werner*, 2021 WL 3662902 at *4. Moreover, that Plaintiff no longer retains the same California counsel for those three matters does not tip the scales in Plaintiff's favor. D.I. 20 ¶ 20. Thus, this factor is neutral.

### E.   The Convenience of Witnesses

This factor is neutral. Under Third Circuit law, the district court is to consider the convenience of witnesses "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012) (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena"). Notably, party witnesses or witnesses who are employed by a party carry no weight as each party is able and, indeed, obligated to procure the attendance of its own employees for trial. *See MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 226 (D. Del. 2017). Neither party has identified any non-party witnesses who are within the subpoena power of the United States District Court for the Central District of California and who may not voluntarily travel to Delaware.[2] Accordingly, this factor is neutral.

---

[2] The only non-party witness identified by either party is Josh Fox, a resident of New York. *See, e.g.*, D.I. 12 ¶ 13; D.I. 21 ¶ 10. However, neither party purports any reason why Mr. Fox would be unable to travel to either district if required to testify.

**F.      The Location of Books and Records**

The location of relevant documents favors transfer, although this factor is accorded little weight.  In infringement cases, most of the relevant documents come from the alleged infringer. *See, e.g.*, *Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 485 (D. Del. 2011) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).  Defendant's records, including any documents about the contents of its websites and channels, are located at Defendant's office in Culver City, California.  D.I. 13 ¶¶ 8-9.  While the location of Defendant's records therefore favors transfer, "technological advances . . . have significantly reduced the burden of transferring evidence, and, consequently, have greatly diminished this as a factor in a transfer analysis." *Intell. Ventures I*, 797 F. Supp. 2d at 485.  More importantly, Defendant has failed to demonstrate that the relevant files and documents "could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879.  Accordingly, although this factor favors transfer, it is given little weight.

**G.      The Enforceability of the Judgment**

This factor is neutral, as there is no reason to believe that judgment would not be equally enforceable in both fora.

**H.      Practical Considerations**

Courts should also weigh the "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879.  A vast majority of Defendant's witnesses and evidence are located at Defendant's headquarters in Central District of California, which would obviate travel and other expenses were this case to proceed in C.D. Cal. *See* D.I. 13 ¶¶ 4-6, 8-10, 12-13; *MEC Res., LLC*, 269 F. Supp. 3d at 227 ("Because [defendant]'s principal places of business and the bulk of their employees are in the Northern District of California, we can fairly

7

assume trial would be more inexpensive there."). Defendant would also no longer need to retain separate local counsel in California, while Plaintiff's expenses in retaining local counsel would remain the same. *See* D.I. 12 ¶¶ 8-9; *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 444 (D. Del. 2015) (the "added cost" of local counsel "should render this factor in favor of transfer"). Traveling from Louisiana to the Central District of California would undoubtably be longer than traveling to Delaware, i.e., an approximately 700-mile difference, *see* D.I. 21 ¶ 15, however, Plaintiff would still be required to travel a large distance regardless of the forum. *See id.*, Ex. 7. Neither party maintains a physical presence in Delaware, nor has either party demonstrated that any witness or evidence is located in Delaware. D.I. 13 ¶ 5; *see Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, C.A. No. 12-139-GMS, 2013 WL 3293611, at *7 (D. Del. June 28, 2013) (factor weighs in favor of transferring where "neither of the parties have employees or maintain offices, facilities, or records" in Delaware). Therefore, although transferring the case will present additional work for Plaintiff in the short-term, in the long term it will minimize travel costs and logistical inconvenience for the potential witnesses and evidence located near Defendant's headquarters in Culver City, California. Accordingly, this factor favors transfer.

## I.    Relative Administrative Difficulty Due to Court Congestion

This factor strongly favors transfer. According to the most recent data provided by the United States Courts, the weighted case filings per active judgeship in this District between April 1, 2022 and March 31, 2023 were 741. *See U.S. District Courts—Combined Civil and Criminal Federal Court Management Statistics (March 31, 2023)*, ADMIN. OFF. OF THE U.S. CTS., https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2023.pdf. By comparison, the weighted case filings per active judgeship in the Central District of California for

that period were 555, while the national weighted case filings per active judgeship were 491. *Id.*
Notably, these statistics do not take into consideration the availability of senior judges to help
active judges handle their caseloads.  Currently, Delaware has no senior judges, whereas the
Central District of California has nine. *See Updated Seniority List of Judges*, U.S. DIST. CT.
CENTRAL DIST. OF CAL., https://www.cacd.uscourts.gov/sites/default/files/seniority-list.pdf (last
updated May 23, 2023).  Given these statistics, it is not surprising that the median time from the
filing of a civil case to trial in the Central District of California is 25.8 months as compared to 33.7
months in this District. *See U.S. District Courts, supra*; *see also Blackbird Tech LLC v. TuffStuff
Fitness, Int'l, Inc.*, C.A. No. 16-733-GMS, 2017 WL 1536394, at *6 (D. Del. Apr. 27, 2017) (factor
favors transfer where "the District of Delaware appears more congested than the Central District
of California").

      Accordingly, this factor strongly weighs in favor of transfer.

### J.    Local Interest in Deciding Local Controversies at Home

      The Central District of California has an interest in deciding a local controversy at home.
This case involves a dispute between a photographer who lives in Louisiana and a company that
has its headquarters in California and operates its relevant website and channels from
California.  The national accessibility of Defendant's website and channel does not diminish the
Central District of California's local interest in the underlying facts. *See Werner*, 2021 WL
3662902 at *5.  While Delaware undoubtedly has an interest in the conduct of its business
organizations, this case involves only one Delaware-related entity.  More so, California's interest
in this suit is particularly relevant given that "California is widely-known as . . . one of the
entertainment capitals of the world" together with Defendant's status as a media company based
in California. *See id.*  Although Plaintiff alleges that she purposefully avoided filing in California

because Defendant, as a California based media-company, would "likely [] receive more sympathy from California jurors who have potential implicitly biases," *see* D.I. 19 at 15-16, Plaintiff ignores that she, too, is a professional commercial photographer regularly employed in the media industry. D.I. 20 ¶ 2.  Accordingly, this factor favors transfer.

### K.    Public Policies of the Fora

This factor is neutral, as there is no reason to believe that states would apply differing public policy considerations in the application of federal copyright law.

### L.    Familiarity of the Trial Judges with the Applicable State Law in Diversity Cases

This factor is neutral because this case involves the application of federal copyright law and is not based on diversity jurisdiction.

### M.    Summary of *Jumara* Factors

In sum, of the twelve *Jumara* factors, six weigh in favor of transfer (one of them strongly in favor), one weighs against transfer, and five are neutral.  Considered in their totality, the factors weigh strongly in favor of transferring this action to the Central District of California.  Thus, a transfer of the case is warranted under § 1404(a).

## III.    CONCLUSION

For the above reasons, the Court grants Defendant's Motion to Transfer this case to the Central District of California.  Because the Court does not reach the substantive merits of Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court will deny this motion as moot without prejudice to refile once this case is transferred to the Central District of California.

Therefore, at Wilmington this 5th day of July 2023, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss and Transfer (D.I. 10), is **GRANTED-IN-PART** and **DENIED-IN-PART** as described herein.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE